### LEWIS H. MAY CO. v. HOLLAND HOLDING CO.

(Supreme Court, Appellate Division, First Department. April 4, 1913.)

BROKERS (§ 86*)—ACTION FOR COMMISSIONS—SUFFICIENCY OF EVIDENCE—CAUSE OF SALE.

Evidence in an action for broker's commissions *held* to show that plaintiff was not the procuring cause of the sale.

[Ed. Note.—For other cases, see Brokers, Cent. Dig. §§ 116–120; Dec. Dig. § 86.*]

Appeal from Trial Term, New York County.

Action by the Lewis H. May Company against the Holland Holding Company. From a judgment for plaintiff and an order denying a new trial, defendant appeals. Reversed, and judgment ordered for defendant.

Argued before INGRAHAM, P. J., and McLAUGHLIN, LAUGHLIN, CLARKE, and SCOTT, JJ.

Albert J. Shaw, of New York City (Benjamin N. Cardozo, of New York City, of counsel, and Harold Swain, of New York City, on the brief), for appellant.

William Paul Buchler, of New York City (Harrie C. Manheim, of New York City, of counsel, and Louis Susman and Leonard F. Fish, both of New York City, on the brief), for respondent.

CLARKE, J. The defendant company owned Nos. 20–22 West Thirty-Seventh street. The plaintiff is a corporation engaged in the real estate brokerage business and throughout the transactions in controversy was represented by one Mullowney. In the latter part of January, Mullowney telephoned Mr. Todd, the president of the defendant, that he was looking for a plot in the 30's between Fifth and Sixth avenues and was informed that Mr. Todd had 40 or 42 feet on West Thirty-Seventh street for which the price asked was $202,000. Mullowney thereupon offered the property to a firm by the name of Thrush & Hirsch, with whom, however, the negotiations came to nothing. Mullowney testified that he suggested the addition of the adjoining parcel, No. 24, and there was talk about that whole plot, but that it was too large for these people and they dropped out.

Mullowney says that he did nothing more until about the middle

---

of April. On the 17th or 18th of April one Marc Lowenthal, another broker, called at the office of the plaintiff and wanted to know if they had a plottage on Thirty-Seventh or Thirty-Eighth streets. Mullowney answered that they had two parcels, one on Thirty-Seventh and the other on Thirty-Eighth street. He testified that Lowenthal said, we will buy it, with a loan, or we will lease it if we can get a building financed for it, and the lease would be for 21 years at $35,-000 a year. Mullowney answered, as plaintiff claims, that the price asked for the plot on one street was $350,000 and that for the other $335,000, but that he could not talk about a lease without seeing the owner. He asked who the prospective buyer was, but Lowenthal said: "It don't make any difference who he is. He is a lace importer on East Twenty-Third street." Up to that time there was no connection between Mullowney and Lowenthal. They were brokers each engaged in his own business.

Mullowney went to see Mr. Todd, April 21st, and told him, according to his story, that if the adjoining house, No. 24, could be procured, he had a customer who would pay a rental of $35,000 for 21 years. He did not mention the customer's name; he did not know it.

On April 25th another broker, Shroder, came to Mullowney and asked whether he had any plottage on Thirty-Seventh or Thirty-Eighth streets. He received from Mullowney Mr. Coleman's property and Mr. Todd's. On April 27th he returned saying that he was too late; that the Thirty-Seventh street property had been offered to his man two days before by another broker. "Who is your man?" asked Mullowney. Shroder replied, "He is a lace importer on East Twenty-Third street." Mullowney answered, "That sounds like the same fellow that Lowenthal is working with." Shroder then told him that the man's name was Julius Sternfeld. That was the first time that Mullowney had heard it. He rang up Lowenthal on the telephone and said:

"'Who is that fellow you are working with on Twenty-Third street?' And he says, 'His name is Julius Sternfeld.' I said: 'What is your idea in telling me that he is out of town for ten days? I have a man sitting here who has just left his office.' He said, 'I told you that he is out of town for ten days as there is another matter on Thirty-Eighth street, and if the Thirty-Eighth street matter goes through there is nothing doing on Thirty-Seventh street. * * * I presented the matter to him; I put four matters up to him and he had the other three. * * * This man is close to me, don't be afraid; there will be nothing done with him except through this man.' I said, 'It is funny you told me he was out of town,' and he said he didn't want to be annoyed. 'I wanted to work with him on Thirty-Eighth street.' * * * Up to that time I had never seen Mr. Sternfeld; I had no dealings at all with Mr. Sternfeld or his company. The only way that I was connected with him was in my deals with Lowenthal and Shroder."

He further testified that he had never had any further talk with Todd until after the publication of the purchase.

Lowenthal's offer to Sternfeld is in writing, dated April 25, 1911, as follows:

"On behalf of the principal I offer the following: Will construct a 12-story loft building to suit at No. 20-22-24 West Thirty-Seventh street on plot 63-11x98-9 and lease for 21 years at $35,000 net per annum."

This was a proposition to lease and not to sell.

The plaintiff's case depends upon three points: First. That Mullowney first suggested to Todd the getting together of the property for sale. Second. That with the authority of Todd he offered it to Lowenthal for his client. Third. That Lowenthal offered it to Sternfeld, and so when Todd sold to Sternfeld the brokerage was earned by plaintiff, Mullowney, and Lowenthal working together for it. The defense denied that the sale had been brought about in any manner by the efforts of Mullowney or Lowenthal, but in an entirely independent way by other brokers who never heard of plaintiffs or its alleged agents in connection with the transaction, and that to these independent brokers the brokerage had been paid. Mr. Todd said he first talked with Mullowney over the telephone in January, 1911. He told him that 20–22 West Thirty-Seventh street was for sale with a loan; the price was $202,000. Nothing was said about No. 24. He received a letter dated February 7th:

"We have placed your property 20–22 West 37th St., 40x98'9" before Henry Thrush and S. Morris Hirsch, Builders, 115 Broadway, at the price spoken of over the phone in our conversation of a few days ago, naming $202,000 with a loan of $2,100 per front foot for 12-story loft building and will report to you how the proposition is progressing later."

Nothing further was ever reported about Thrush & Hirsch. In April Mullowney asked about the possibility of acquiring No. 24 and leasing it for a term of years at an annual rental of $35,000. He did not say anything about who the proposed party was, or where he was located. Todd told him there was a possibility of getting the property, but he would not build. He said nothing about a proposed price for selling the three houses. At no time did "I have any conversation with Mr. Mullowney or any one representing the plaintiff, in which I authorized them to procure a purchaser for the three properties 20–22–24."

Cooper, a broker, had been coming to his office occasionally for several years. The first of May he was trying to fix a price that Todd would buy and sell No. 24 with 20 and 22.

"I told him I did not own the property 24, but I thought it could be bought He said he wanted to bring in a party and see if we could not get together on a deal. He said it was Julius Sternfeld. Up to that time I had never met him or had any dealings with him. Mr. Sternfeld came in the next day with Cooper and we had quite a long chat. There was considerable negotiation with regard to terms and prices, but nothing definite. I offered a price for the purpose of purchase, $335,000. Nothing whatever was said at this interview about a proposed lease of the property from my company to Sternfeld. The entire subject was a sale. Nothing was concluded between us on that day. The next day there was further negotiations and a contract was signed. In the negotiations I had with Mr. Sternfeld down to the time I signed the contract with him it was not brought to my attention in any way that Mr. Sternfeld or any of his corporation had ever had any dealings with the Lewis H. May Company or any one connected with them. I paid Cooper a brokerage in the transaction. I never met Mr. Lowenthal in connection with this property or had any communications with him. I never met Mr. Shroder in connection with this property, or the sale of it, or had any communications with him whatever."

The contract for the purchase of No. 24 West Thirty-Seventh street was signed on May 5th, and the contract for the sale of the property in its entirety was signed the same day.

"Douglas Robinson and the Charles F. Brown Co. first put the idea into my head of getting 24. That was the early part of January, the very day I signed the contract for 20."

Cooper testified that early in April he had been given a letter of introduction by Mr. Prager, attorney, to Mr. Sternfeld, and took up with him the purchase of 9 and 11 West Thirty-Eighth street.

"Sternfeld told me positively that he would not purchase 9 and 11 which he had practically closed a deal on, as he could not finance it. I suggested to him that I could probably get him a plot financed on Thirty-Seventh street, and he asked what the property was. That was the 1st of May. I told him that the property I had in mind the one had 40 feet and he would likely buy adjoining lot and would make him a loan. Late in the afternoon of May 1st, I had a talk with Mr. Todd. I first named Sternfeld to Todd. I introduced Mr. Sternfeld to Mr. Todd the next day. Q. And up to that time that you introduced then did you know anything about any communication that Mr. Mullowney or the Lewis H. May Company might have had with Sternfeld? A. I didn't know until this morning at the trial."

Sternfeld testified that he first met Todd about May 5, 1911, having been introduced by Cooper, whom he had known for a month, having been recommended to him by his lawyer Prager; that Cooper was the first person who suggested to him a proposed purchaser of the premises 20–22 and 24 West Thirty-Seventh street; that Lowenthal never made any proposition in regard to these properties except the one in writing, which was for a loan; that he never had any dealings with plaintiff with regard to the purchaser of the 20–22 and 24. Randolph testified that he went to Mr. Todd on the 1st of May and asked if there was any possibility of acquiring 24, that he represented some people who would be interested to acquire a plot, with certain arrangements, and Todd said he could probably acquire the adjoining property provided he could get a satisfactory man to do business with. He did not know at that time that anybody else other than himself or Cooper had made any proposition to Sternfeld with reference to that property.

It is established that Mullowney had absolutely nothing to do with the negotiations, terms, prices, or anything else, out of which grew the contract between Todd and Sternfeld. The first thing he knew about it was when he saw the completed transaction in the newspaper. He was not given the property to sell by Todd, nor asked to purchase by Sternfeld. He did not know Sternfeld, and of course he did not introduce him to Todd. He is trying to take advantage of an independent transaction because at some time he had a talk about an entirely different transaction with the defendant.

There is no foundation in the evidence for the finding, that he or Lowenthal—and hence the plaintiff—was the procuring cause of this sale. Plaintiff has failed to establish by satisfactory evidence that it did something substantial, that it was the efficient and procuring cause of the sale. The law has been recently restated in Haase v. Ullmann, 148 App. Div. 40, 131 N. Y. Supp. 1050, and Wynus v. Utz, 152 App.

Div. 756, 137 N. Y. Supp. 552. The case should have been disposed of by the court on the motion for a direction by the defendant.

The judgment and order appealed from should be reversed, and judgment ordered for the defendant, with costs and disbursements to the appellant. All concur.